Our fourth argument of the morning is in Appeal 25-1649, Miao v. United Airlines. Is it Mr. Nichelle? Nicolay. Nicolay. I'm sorry. Nice to see you. Thank you. You're welcome. Whenever you're ready. Thank you. May it please the Court, Counsel, my name is Joe Nicholay, I represent Yubo, he goes by the name Bill Miao in this matter. Respectfully, the District Court was in error in determining that Mr. Miao had not stated plausibly facts to assert a claim for violation of 42 U.S.C. section 1981, which has to do with race and contracts. Before the District Court was a complaint in which Mr. Miao alleged that on June 1st, 2023, that he was a passenger on a United Airlines flight heading from Chicago to San Diego. Immediately upon walking onto that flight, he observed a flight attendant who was staring him down, and immediately he felt that he was being profiled and targeted. Flight attendants, though, are trained to do exactly that to every passenger who enters the cabin. That's correct, right?  Well, I do not know that for a fact, Your Honor, as we never got the chance to go to discovery to determine that type of fact. And I think that goes to the crux of the appeal here, is that we are at the pleadings stage of this matter. And at the pleading stage, viewing the facts most favorably to a plaintiff, as the District Court should have done in this case, the District Court made several findings in dismissing this complaint and finding that he had not stated a plausible claim. Specifically finding . . . These are the kinds of things that maybe ought to come out in pretrial, in preparation for summary judgment. Right? Yes, Your Honor. These are facts. These are evidentiary facts. Issues of facts. Have you seen many cases like this where it's been decided on the complaint? I'm sorry, Your Honor? Have you seen many cases where something, a case like this has been decided on a complaint? I have not, Your Honor. And there was a few cases that I know that United cited in their appellate brief. There was maybe one that was decided on 12B6, but the majority of the cases that were cited were cited, as Your Honor has alluded to, on a motion for summary judgment, after discovery, after the plaintiff had a chance to marshal the evidence and present that to the trier of fact. Now, they say that your client didn't disobey the flight attendant. What do you have to say about that? Well, Your Honor, in this instance, again, this is a factual issue that should be decided by the trier of fact. The flight attendant instructed my client to remove his lunch bag. He put the lunch bag next to his seat that was empty with the intention of putting it under the seat once another passenger came. And did he explain that to the flight attendant? When he tried to explain that to the flight attendant, that's when she started yelling at him and started screaming at him. And immediately, and this is as alleged in the complaint, of course, immediately upon that occurring, this overreaction, he put the lunch bag underneath the seat. And what is that? Go ahead.  I'm sorry. Well, so your view or characterization of your defendant's activities is that he partially complied and provisionally totally complied. He took it out of the overhead, he put it on the seat, and he said, as soon as we get to the point where the seat's needed, I'll be glad to put it under there. I'm just trying to keep airline cooties away from my lunch as long as I can.  That's exactly right. I don't mean to suggest that it's trivial, but really, I don't think, and this would be, again, an issue for the trier of fact that we should be allowed to get to, that that was an unreasonable type of position to take. But say all that's true, what does it have to do with race? It has to do with race is that other employees, or other, excuse me, passengers who are non-Asian had a similar, I would say, bad situation as Mr. Meyl, was not confronted in a similar manner, and ultimately was not removed from the plane. And as alleged to the complaint, a fellow passenger, and this will be an issue that hopefully we'll have the chance to explore during discovery, a fellow passenger even commented to Mr. Meyl that the communication and the interaction with this flight attendant was disrespectful to him. So there is some evidence then, or there would be some evidence in the record, that the flight attendant got out of line. I'm sorry. That the flight attendant got out of line. Yes. We believe so, Your Honor. And we believe that other passengers, once we have the opportunity to explore who those are and depose them, will support that. Because they, in fact, as alleged in the complaint, someone made a comment to him that there was this disrespectful tone and interaction. And it goes even further, is that there was an invented story that he had hit this flight attendant. Now, when was, did that, the flight attendant says she was hit during that confrontation at his seat?  Yes. And this all happened in a, this was a very quick interaction. This was not some of the other cases that are cited have, you know, 15 minutes, 20 minutes of arguing back and forth. This was a quick interaction in where he was directed to put the bag under the seat. He pushed it on the, put it on the, or excuse me, under the seat, then he put it on the seat. She came back. Had this overreaction, laughed, and then I would say minutes later came back and there was this, this, you know, this lie, essentially, that he had hit her. Is it your position that if, you know, a crowded airplane, there's only so much room in the overhead space, right? Yes. In a crowded airplane, is it your position that if a flight attendant tells a black passenger that he needs to check his bag, but doesn't tell every other white passenger on the plane that they need to check their bags, that you could file a complaint for race discrimination? Because that's kind of what I'm hearing. Well, I think, I don't think, well, first off, that would be discrimination if they're being singled out. But I don't think that would get to the heart of. That's what I'm asking you. What, what is your evidence? What, what, I'm not evidence. What fact in the complaint should I look to that says this happened to him because he's Asian? I understand it happened to him. Take every fact that's been introduced. What evidence do you have that it happened because he's Asian? Well, I think the facts, and as alleged, is the total interaction itself. That he was being stared at as he walked in immediately on the plane. That no other white or other non-Asian passenger was confronted regarding this bag. And then on top of that, we have this over-the-top reaction where he's being yelled at. Further on that, the next, the next step is, is that she's, that the flight attendant's coming back with. You see my concern, what I'm getting at, with all your lists? I mean, so the flight attendant was staring at the black passenger, but not the white passenger, according to the black passenger. And then there was only, only one bag would fit in the overhead bin. And the flight attendant said, we got to check your bag to the black passenger. And so he sues for race discrimination. That's what it sounds like. Well, but I, the bigger fact is that he's ultimately removed from the plane. That's the gravamen of the complaint, is it not? Yes. They tossed him off the aircraft. Yes. And for a certain amount of time, he was blacklisted by United. Yes. And that's, that's the, it's, it's a total interaction. But I understand from the complaint that he agrees that he disobeyed the flight attendant's instructions. I, I don't think we would characterize it as disagrees. He, he took the. No, no. I said he agrees. I, the way I read the complaint, he agrees that he disobeyed the flight attendant's instructions. Well, I, I would say that he acted reasonably in, in initially putting it on the seat and waiting until another passenger came. And I think that's why we need to be able to get to a trier of fact to actually determine that, that fact. That's an issue of fact to determine whether he or not acted, you know, with, I mean, the district court characterizes it as misconduct. Of course, he wasn't, we don't know either whether he ever would have gotten tossed off the plane if he just left his lunch on the seat. We know he, the United says he got tossed off the plane because he physically assaulted a flight attendant. Right. Right. That's correct. And your honors, I, I see that. We have, we do, with respect to the captain, captain never actually got involved in this as far as, other than somebody, the supervisor, whoever he or she was, said the captain ordered it. We don't know what the captain ordered, right? That's from the captain. Well, we don't know at this time. And that, I guess that's the point is that we are at the pleading stage and we have not had a chance to explore that discovery and, and that we believe that the district, I'm sorry, your honor. Well, if we've got a bigoted flight attendant on our hands who decided she had to make her case and, and invented having been hit, why don't we have a simple cat's paw situation where, uh, even if she did go to the captain, she lied to him? Well, we, I think we would have that, your honor. Um, and I mean, it's just, and that would be consistent with your complaint. Am I correct? It would be your honor. Yes. Thank you. Mr. Nickley. We'll give you a rebuttal time. Can I ask you a couple of just fringe questions? Yes, your honor. There are more, much more at the fringes than what your colloquy has been so far. Yes. We have a situation here where there, there was a motion, uh, to dismiss that was granted without prejudice. Yes, your honor. Right. But we have a judgment entered. We do. There was, there's, am I right? There was never a request in the wake of all this or in connection with it all in the district court. Your client did not ask for permission to amend, to refile. We did not. And we looked very carefully at that, your honor. Um, and that the judge's opinion, um, it was, it was in my view, a little bit of unusual situation where it was dismissed without prejudice, but judgment was entered. Yeah, we've seen it before. So is it, can we, can we take it from you that in your view or your client's view, everything is final in the district court? Absolutely. There's nothing else to do in the district court. No, you're not suggesting there was a failure to provide leave to amend or anything like that. No. And we had looked in considering how to proceed after that ruling, we had considered whether we should file a motion to, to, uh, for leave to file an amendment complaint. But based on the judge's ruling where he made findings of misconduct and actually said that under these facts that the only consideration was there was no discrimination. Um, I mean, there was nothing we could add.  All right. And then one other one, if you don't mind. Yes, your honor. Okay. Are you, are you appealing the denial of the 1981 claim to the extent that it roots itself in a theory of retaliation? And what I'm trying to, what I'm trying to distinguish in my mind is the affirmative allegation of discrimination based upon the Asian heritage. That's clear. That's crystal clear. Right. Okay. But there's also a flavor of this that is retaliatory because your client ended up having some kind of long questioning period or dialogue with United before he boarded the next flight or attempt, attempted to board the next flight, right? That, that United was, is, is the retaliation theory to the extent that it exists. Is that before us on appeal? I wouldn't characterize it as a separate type of action if that's what your, your, your honor's questioning because he ultimately at that time was allowed to get onto a flight. I mean, there was this, this inconvenience of having to. Okay. Do you, as you stand there right now, do you think of the complaint? Do you think of the claim that your client wants to go forward on as a discrimination claim or a retaliation claim or both? It's a discrimination claim. Yeah. Okay. All right. That's helpful. Thank you. We'll give you the rebuttal time. Thank you, Your Honor. I appreciate it. Okay. Let's hear from a United's counsel. Good morning, Your Honor. Good morning, counsel. May it please the court. My name is Richard Harris. I'm here today on behalf of the defendant at Hawaii United Airlines. Your Honor, there's three points I want to make quickly today. The allegations in the complaint do not give rise to a plausible inference of discriminations. Justice Hirsch pointed out, who's Kirsch, pardon me, second plaintiff failed to identify a similarly situated comparator. The district court correctly analyzed that issue. And third, there was no contractual impairment here. There's no allegations of the deprivation of a contractual benefit based on the allegations. I think the district court judge correctly ruled that the only reasonable inference to be drawn in this case applied principally by the plaintiff's own conduct as outlined in his complaint is that he was not the victim of discrimination of any kind. Your Honor, anyone who deliberately and repeatedly refuses a crew member's instruction during the boarding process of a commercial airline flight can reasonably expect to be removed from that flight. I think that's the bottom line in this case. I don't think we need to have any discovery or a factual determination as to whether the instructions were disobeyed. If the instruction was obeyed, the flight attendant would not have needed to ask three times. And this is a crucial stage, the pre-boarding stage, where the flight attendants are trying to get the aircraft ready to fly at 40,000 feet. And we've got federal regulations, as well as we pointed out in our brief, the contract of carriage. So your position is that if the flight attendant had gone to the captain and said, I have a passenger who will not put his, who insists on leaving his lunch on the seat rather than under his seat until we get to a later stage in the boarding process, that the captain would have said, toss him off the flight? It would have been within the captain's discretion. But we don't know that, do we? We don't know how he would have exercised his discretion. Well, and I don't think that we need to get there respectfully, Judge, because in the cases that we cite in our brief point out that the valid concern here is that if a passenger won't follow the instructions before the plane has even left the gate, there's no certainty that that passenger is going to follow instructions once in the air. That's the captain's, that's the captain's call. If, I mean, to the extent that we would be asserting the 44902B, the airline removal immunity, yes, traditionally the courts rule that that depends on the captain's call. He's the pilot in charge of the airplanes, in charge of the crew and all the passengers. But I don't know that we reach that issue logically in this case, because as I believe the district court, again, correctly identified, and I think the Deshaun Ray case that we relied on, you asked if there were any other cases like this, and this is a case from the Ninth Circuit, very articulately that racial animus cannot be reasonably inferred just because the flight attendant's purportedly unjustified reaction. And also- In other words, she could have exercised bad judgment here in asking him to put his lunchbox under the seat and going to the captain and asking that he be removed. But there's nothing in the complaint that alleges that she did that because he was Asian. I absolutely agree with that statement, aside from perhaps the characterization of bad judgment and overzealous. I understand. But no, no. I'm asking about the Ninth Circuit, or the case, the district court case in the Ninth Circuit. I read that case to say it doesn't matter if the flight attendant exercises bad judgment. It doesn't matter. Right. That was with the cell phone and the recording policy. And I think- Suppose she exercises bigoted judgment. Well, if we had a single allegation that would support that inference, Your Honor, then this might have been properly dismissed without prejudice. I think- Well, to get to that point, I do think that we're done in the district court. I do think jurisdiction here is proper. I do think that there's nothing left to do. But what they can't get around, what the plaintiff cannot get around is the alternative explanation theory that came out of the Deshaun Ray case. It says, when faced with two possible explanations, only one of which can be true, and the other which results in liability, the plaintiff cannot offer allegations that are merely consistent with his favored explanation, but are also consistent with the alternative explanation. That's at pages 1281 and 82 of the Deshaun Ray case. So just taking these facts on their face, he twice disobeyed the flight attendant's  That is the case out of the Central District of California, am I right? That's correct, Judge. And it's lifted right from Iqbal in a very different context, isn't it? That language. Yes. The language does track the pleading of the plaintiff. Yeah, it does. Welcome to AI. Judge, this was not a hallucinogenic recitation here, but I think that it tracks the proper analysis that the Deshaun Ray case does, and I think that this case is, for lack of a better term, on all fours. Just because he disobeyed the flight attendant's instructions, he was removed from an aircraft, he alleges the flight attendant made up a false allegation about why this happened. His privileges were suspended with United for, I believe, five weeks until they were reinstated while United investigated. Now just those facts alone, there's nothing about race here. This could have been a Caucasian person, a Latino person, an Asian person, could have been anyone. And as we, you know, the Santa Fe Railroad case from decades ago says that anyone has standing to sue under Section 1981. So you could substitute any race you wanted into this set of facts, and it wouldn't give rise to a plausible inference of racial discrimination. And what the Deshaun Ray case says is merely invoking one's race in the course of reciting your narrative doesn't transform an otherwise invalid set of facts into a valid Section 1981. And if we went to discovery, you just might prevail on that, right? If we went, I certainly would, Judge. I understand the question. I don't think discovery is needed here because, again, he acknowledges disobeying the flight attendant. The judge, that's the reason for his removal, principally supplied by his own conduct. What I'm getting at is we are seeing more and more cases where corporations, as defendants, are pushing hard on the specificity of the complaint to get rid of cases before they get to discovery. This case may be one of them. Well, I don't, I mean, Judge, yes, I represent a corporation. I'm also an attorney. I see a 12 v. 6 argument jump off the page of me here. I see case law supporting it. And so I'm arguing zealously for that point. You referenced the cat's paw theory earlier, Judge. I believe case law says this is not applicable in the Section 1981 context. We need to have specific, purposeful, intentional discrimination here. And so the cat's paw theory, you know, the Title VI claim is gone. That's one of the frustrating things here as I prep the jurisdictional statement. That's usually used in the Title VI context. Here, under Section 1981, we don't rely on the cat's paw theory. And so I really think that the district court's analysis was, when we haven't gotten to, you know, the similarly situated comparator, well, that's why. Well, this was this all about. I mean, that's, I took that was what your argument is about. There's no, he can't point to any white person who didn't follow the flight attendant's instruction. Right. So because the facts as alleged on their face say nothing about discrimination, say nothing about race, that's why, I mean, recognizing that inherent weakness in the complaint, that's why plaintiff is resorted to trying to state the prima facie case. Which, mind you, as the district court recognized, prima facie case by using the similarly situated comparator. Now, contrary to plaintiff's arguments, that does not require that the similarly situated comparator be precisely the same in every single respect, just in all material respects. So as the court, Deshaun Ray, recognized, he needed to allege that there was, that this other passenger, there were other non-Asian passengers who were disobeying flight attendant instructions. It didn't have to be regarding their lunchbox. It could have been with the laboratory sign is on and you're disobeying that instruction. It could have been a myriad number of instructions. Cell phones. Okay. We've all, I'm assuming flown commercial airlines in this room, the flight attendants are giving everyone instructions as they go up and down the aisle. Okay. Those aren't optional. No matter how trivial plaintiff may think they are, you have to follow those. And if he had alleged that there were other non-Asian passengers who were disobeying similar instructions, but they received favorable treatment, I, that might open the door to discovery, but we don't have that here. So for these reasons, your honors, unless there are any further questions, uh, I asked that the court respectfully affirmed the district court's dismissal and, uh, do so, um, with prejudice without leave to refile. Cherish. Thanks to you. Okay. Thank you. Mr. Nickley. And I will be brief because I, I believe that all these positions are set out in the briefs and I don't want to beat the peripheral, uh, dead horse. But, uh, again, I think the issue that we, we, we, we come here is it's, we're almost arguing facts and evidence here. And, and the point that needs to be come back to is this is a motion that's on the pleadings and in this district is no notice pleading. And there have been allegations that Mr. Mile was discriminated against based on his race. There's allegations that he was stared at as he walked into, uh, to the plane. There's allegations that other individuals who are not Asian, who are Caucasian had similar bag situations and were not confronted and were not ultimately removed from the plane. Um, regarding the comparative, uh, uh, passenger, most of the case law is, is, is your honors are aware of that deal with these, these, uh, comparisons are in the appointment context. This court has consistently held or has held in prior cases that this is not a, this is a flexible approach. It does not have to go to one-on-one mapping. And I think that is very, uh, true in a case like this where it's not an employment case, where it's difficult to say they're same supervisor, same situations because it's, it's not a situation where that lends itself. And so in this case we have same, uh, passengers, one of the one at least as alleged in the complaint had a similar bag situation, was not treated in this manner, was not removed from the plane. And the district court ultimately, uh, it was the district court's opinion that this was essentially about bag placement. Um, and I think it's unfair to characterize that case as this, as this. This, uh, this incident affected Mr. Myle very deeply. His civil rights were impinged. He was humiliated when he had to be, when he was yelled at in front of other passengers and ultimately removed from the plane. And I don't believe this case can be minimized, but, uh, based on that. And he should have the right to marshal his evidence, present that to a trial or fract. And based on that, we'd ask that this court please, uh, reverse the district court's dismissal of the complaint. Thank you. Okay. Very well. Uh, Mr. McLee, thanks to you. Uh, Mr. Harris, again, thanks. We appreciate it. We will take the appeal under advisement. And with that, the arguments, uh, for the day are concluded. So the court will be in recess. Thank you.